ORIN GILL AND EBENEZER WEBSTER, AS ADMINISTRATORS, ETC., OF ARTHUR O. GILL, PLAINTIFFS, *v.* THE ROCHESTER AND PITTSBURGH RAILROAD COMPANY, DEFENDANT.

*Liability of a railroad company for putting a passenger off a train — when liable for injuries resulting from his incapacity to take care of himself — what may be considered as damages sustained by a father because of the negligent killing of his minor son.*

The deceased, while a passenger on one of the defendant's trains, was put off by the conductor for failing to produce a ticket or pay his fare, at a place called Haskins' cut, distant something over a mile from the nearest station, and about 115 rods from the nearest accessible dwelling.   He was put off at about half-past seven in the evening of Saturday, February twenty-fourth, on a dark, cold and stormy night.   As the train moved away he was seen standing, or leaning, against the bank of the cut.   He was not seen again until half-past seven on the morning of the following Monday, when his dead body was found on the opposite side of the track from that on which he was put off, lying in partially frozen mud and water.   The immediate cause of his death was suffocation or drowning.

The judge charged, among other things, that if more than necessary force and violence was used in putting the deceased off the cars, resulting in his being so stunned and paralyzed as to be rendered incapable of taking care of himself, and that by reason of such incapacity he fell into the mud and water and were drowned, the plaintiffs were entitled to recover.

*Held,* that as the evidence was sufficient to authorize the jury to find that the facts assumed in the charge existed, the charge was correct.

It was claimed by the plaintiffs that when the deceased was put off the train he was, to the knowledge of the conductor, so intoxicated as to be incapable of taking care of himself.   The defendant's counsel requested the court to charge that if the jury found that the intoxication of the deceased contributed

in any degree to his inability to get out of the situation in which he was found, such intoxication was to be attributed to him as contributory negligence, and, if it existed, prevented a recovery; also that if the deceased, being under the influence of liquor, fell in the place where he was found, and the influence of liquor contributed to, or aided in producing, his inability to get up out of that position, and his death was caused by suffocation or drowning, coupled with such inability, the plaintiff could not recover.

*Held,* that the court properly refused so to charge.

The judge, after instructing the jury that the plaintiffs were entitled to recover the damages sustained by the parents of the deceased by reason of the loss of his services during his minority, said: " Another item of damages which the jury have the right to consider and determine, is the benefit that would be likely to result to the parents of the deceased from the counsel and advice that they might have received from their son during life." The evidence showed that the father of the deceased was a farmer, and that he had a wife, three daughters and two sons besides the deceased; that the deceased, who was about seventeen years old at the time of his death, was in good health and had always lived with his father, except when he worked out by the month in the summer; that he had assisted his father upon the farm, and that for a part of the winter preceding his death he had attended the district school.

*Held,* that as there was nothing in the evidence or in the circumstances of the case to guide the jury in deciding the matter submitted to them by the said instruction, and as any conclusion they might reach on that subject would be the result of mere speculation, that it was error to so instruct the jury.

Motion by the defendant for a new trial on exceptions taken at the Wyoming Circuit, and ordered to be heard at the General Term in the first instance.

*Johnson & Dean,* for the plaintiffs.

*Martin W. Cooke,* for the defendant.

Smith, P. J:

The action was brought to recover damages ensuing from the death of the plaintiffs' intestate, Arthur O. Gill, alleged to have been caused by the negligence of the defendant's employees.

The deceased was a passenger on defendant's train that left Le Roy, running westwardly, at about half-past seven in the evening of Saturday, 24th of February, 1883. He not having complied with the conductor's call for a ticket or his fare, the train was stopped and he was put off at a point something over a mile distant from the Le Roy station, in what is spoken of by the witnesses as Haskins' cut, about 115 rods from the nearest accessible dwelling house.

The night was dark, cold and stormy. As the train moved away, the deceased was seen standing or. leaning against the bank of the cut. No witness speaks positively to having seen him after that, until a few minutes past seven o'clock on the following Monday morning, when his dead body was found on the opposite side of the track from that on which he was put off, lying in partially frozen mud and water. The immediate cause of his death was suffocation or drowning.

At the trial two theories of the defendant's liability were presented by the plaintiffs, upon the assumption that the putting of the deceased off the train at the time and place and in the manner shown by the testimony, was an improper and negligent act. First, that the deceased was put off with unnecessary violence, and was so stunned or paralyzed thereby, as to be incapable of taking care of himself, and secondly, that he was so intoxicated as to be incapable of caring for himself, to the knowledge of the conductor when he put him off the train. The trial judge submitted each of those hypotheses to the jury, and they found a general verdict for the plaintiffs. The charge in respect to the first theory was, in substance, that if more than necessary force and violence was used in putting the deceased off from the cars, resulting in the stunning or paralyzing of the deceased so that he was incapable of taking care of himself, and because of such incapacity he fell into the mud and water and was drowned, the plaintiffs were entitled to recover. To that part of the charge the defendant's counsel excepted, on the ground that there was no evidence to warrant it. The case is not so bare of evidence on that subject as to justify the exception. One of the plaintiffs' witnesses testified that he saw the conductor pulling the deceased out of the door. Another, that when the conductor was taking the deceased out, the latter was down; * * * "he went out quick;" * * * "he was going on the floor out of the door" when witness first saw him. Another witness testified that she saw deceased as he was going over against the bank; he went as though he had been pushed with force, and was going with the force that he was propelled with against the bank; "while on the platform he seemed to be perfectly limpsy, and he seemed to be so after that;" while on the platform, "I should suppose he was standing; I could see part of his body above the win-

dow; he didn't seem to have any government of himself — that is, use of his arms, and his head was lying over in a kind of limpsy manner; after he fell he laid just as he fell; I couldn't say whether he fell with considerable force or not." Another witness stated that she saw deceased lying on the bank after he was put off; saw him through the car window; he appeared as though he was lying on his back, as she thought; he appeared as though he was asleep; she didn't notice him moving any. There was other testimony tending in the same direction to which it is unnecessary to refer. There is enough of it, we think, to warrant the charge.

The appellant's counsel further contends that upon the question of fact involved in the part of the charge excepted to, as above stated, the verdict is against the weight of evidence. That contention cannot be made here. Under the order made by the trial court the exceptions alone are before us. A motion for a new trial, on the ground that the verdict is against the weight of evidence, cannot be heard at the General Term in the first instance. It should be first made at Special Term on a case, or at the circuit on the judge's minutes. The General Term hears motions of that nature on appeal only.

Upon either theory presented to the jury, whether the deceased was incapacitated from caring for himself, by intoxication or by a paralyzing stun, if he was in fact so incapacitated, and so continued until he perished, we think his ejection from the cars, under the circumstances, must be regarded as the proximate cause of his death. By reason of his incapacity no voluntary and conscious act of his own could intervene between the original cause and the final result, and the case is the same in legal effect as if, when ejected from the car, he had been thrown into a pool of water and instantly drowned.

And the fact of his incapacity answers also the claim of the defendant's counsel, that it does not appear that the deceased was free from negligence which contributed to his death.

The defendant's counsel asked the court to charge that if the jury find that the intoxication of the deceased contributed in any degree to his inability to get out of the situation in which he was found, such intoxication is to be attributed to him as contributory negligence, and if it existed it prevents a recovery. Also, that if

deceased, being under the influence of liquor, fell in the place where he was found, and the influence of liquor contributed to, or aided in producing, his inability to get up out of the position, and his death was caused by suffocation or drowning, coupled with such inability, the plaintiffs cannot recover. Each request was declined and the defendant's counsel duly excepted. He now argues that the refusal was error, since the circumstances of the death were such that the jury might have found that the inability of the deceased to extricate himself was due to intoxication developing after he was ejected from the cars. But that view of the matter was not suggested at the trial, by a request to charge, or otherwise, so far as we are advised by the printed case. The requests which elicited the refusals excepted to conveyed no such idea, and in view of what the judge had previously charged to the effect that if the incapacity of the deceased was the result of his intoxication, the intoxication must have been known by the conductor when he ejected the deceased in order to entitle the plaintiffs to recover, the requests were properly refused.

A single other question remains to be considered. After the judge had instructed the jury that the plaintiffs, if entitled to recover, were entitled to the damages suffered by the parents of the deceased, because of the loss of his services until he obtained his majority, he further charged as follows: "Another item of damages which the jury have the right to consider and determine, is the benefit that would be likely to result to the parents of the deceased from the counsel and advice that they might have received from their son during life." An exception duly taken raises the question whether that instruction was erroneous.

It has been said that the statute, in allowing "pecuniary" damages to be recovered, has set no bounds to the sources of such damages. (*McIntyre* v. *The New York Central Railroad Co.*, 37 N. Y., 287.) In order to constitute a pecuniary damage within the meaning of the statute, it is not necessary that there be a direct loss of money or property; it is enough if there be a loss of something of a pecuniary value, that is to say, which can be measured or recompensed by money. And it is not necessary that the loss should be of something to which the next of kin are legally entitled; it is enough, if it be the loss of something which they had a reason-

able expectation of receiving, as matter of right or otherwise. Thus, the loss sustained by infant children from the death of their mother, in the consequent deprivation of maternal nurture and training, has been held to be a proper basis for a recovery. (*Tilley* v. *The Hudson River R. R. Co.*, 24 N. Y., 471.) So, where the person killed was a child of very tender years, it was held that the parent was entitled to recover such reasonable damages as the jury should estimate from evidence as to the age and sex of the child, the circumstances and condition in life of the parents, or other facts existing at the time of the death or the trial. (*Ihl* v. *Forty-second Street, etc., R. R. Co.*, 47 N. Y., 319.)

We are not prepared to say that the item of damage suggested by the charge excepted to may not, in any case, form a ground of recovery under the statute. But where the person killed is a minor child, in order to justify a recovery on the ground indicated in the charge, there should be evidence justifying the conclusion that if the child had lived it might reasonably have been expected that the parent would have received from him advice and counsel of such a nature as to have a pecuniary value. The mere possibility that the parent might become dependent upon others for advice and counsel in the management of his affairs, by reason of imbecility or feebleness arising from old age or other cause, is too uncertain and remote to form the basis of a recovery. The only evidence in the case as to the circumstances and condition in life of the father of the deceased and of his son is, that the father is a farmer; that he has a wife, three daughters and two sons surviving; that the deceased was in his seventeenth year at the time of his death; that his health was good; that he had always lived with his father, except when he worked out by the month in the summer; that he assisted his father upon the farm, and had been in the habit of doing so since he was large enough to do anything, and that a part of the winter preceding his death he had attended school in the district in which his father lived. We think there was nothing in the evidence or in the circumstances of the case to guide the jury in deciding the matter submitted to them by the instruction excepted to, and that any conclusion they may have reached on that subject was the result of mere speculation. As it is impossible to say that their

verdict of $2,000 was not enhanced thereby, there must be a new trial.

New trial ordered, costs to abide event.

BARKER and BRADLEY, JJ., concurred ; HAIGHT, J., not sitting.

New trial ordered, with costs to abide the event.